UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIRK BIERBAUER, | ) | CASE NO. 4:09CV2142 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN MANENTI., M.D. et al., | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

Before the Court are two motions by defendants to dismiss the Complaint. (Doc. No. 1.) First, a motion to dismiss all state tort claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), was filed by substituted defendant United States. (Doc. No. 16.) Second, a motion to dismiss pursuant Fed. R. Civ. P. 12(b)(6) or, in the alternative, a motion for summary judgment under Fed. R. Civ. P. 56, was filed by defendants seeking dismissal of all federal claims. (Doc. No. 17.) Plaintiff has filed a single memorandum in opposition (Doc. No. 19), and defendants filed a single reply (Doc. No. 21). The matter is ripe for determination. For the reasons set forth below, defendants' motions for dismissal under Fed. R. Civ. P. 12(b) are **GRANTED**.

## I. BACKGROUND

Plaintiff Kirk Bierbauer ("Plaintiff") filed the Complaint on September 16, 2009. The Complaint sets forth two causes of action against defendants: first, *Biven* claims based on alleged Eighth Amendment violations against defendants John Manenti, Jimmie Ward, J.T. Shartle, P. Harvey, Moheb Sidhom, and J. Barnes (collectively, "Defendants"); second,

Federal Torts Claim Act ("FTCA") claims based on alleged violations of Ohio medical malpractice law against defendants Manenti, Ward, Harvey, Sidhom, and Barnes (collectively, "Medical Defendants").[1] (Compl., ¶¶ 8, 12, 82.) Plaintiff makes the following allegations in the Complaint.

Plaintiff suffered a slipped capital femoral epiphysis, a condition where the ball of the hip joint is separated from the thigh bone. (Compl. ¶ 13.) Plaintiff was treated for this condition at a young age, including four surgeries as a teenager. (*Id.*) After the surgeries, Plaintiff's left hip had a less than normal range of motion, his left leg was shorter than his right leg, and starting in 2005, Plaintiff began to experience debilitating pain in his hip and leg. (*Id.*)

Plaintiff was incarcerated at Elkton Federal Correctional Institution ("Elkton") in Lisbon, Ohio from January 30, 2007, until September 29, 2008. (*Id.*¶ 15.) Defendant Sidhom, a physician assistant at Elkton, performed Plaintiff's medical intake screening and evaluation and noted that Plaintiff regularly experienced some pain in his leg. (*Id.* ¶ 17.) Plaintiff was treated by another physician's assistant, who is not party to this suit, on several occasions starting on February 7, 2008. (*Id.* ¶ 18.) This physician assistant requested that Plaintiff be issued a "soft shoe" and a "bottom bunk" pass, placed him on restricted work duty, exempted him from sports activities, ordered hip x-rays, and requested a consult with an orthopedic surgeon. (*Id.* ¶ 18.) Each of this physician assistant's requests concerning Plaintiff's medical care were granted: hip x-rays were taken within a matter of days, and on February 8, 2007, Elkton's Utilization Review

---

[1] Plaintiff also names "Unknown members of the Elkton FCI/FSL Utilization Review Committee from December 2007 through April 2008" and "Unknown members of the Bureau of Prisons Medical Transfer Committee during April 2008." Plaintiff has not amended the Complaint to properly name these fictitious parties. Accordingly, an action has not been commenced against these parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalion v. Michigan Bell Te. Co*., 404 F.2d 1023, 1028 (6th Cir. 1968).

Committee issued Plaintiff the requested soft shoe pass, bottom bunk pass, and approved a consultation with an orthopedic surgeon. (*Id*. ¶¶ 19, 20.)

On February 12, 2007, Defendant Harvey, a physician and the clinical director at Elkton, treated Plaintiff during which time Plaintiff complained about his hip and leg. (*Id.* ¶ 20.) Defendant Harvey reviewed Plaintiff's x-rays and ordered no additional medical care. (*Id.*) On April 26, 2007, Plaintiff was treated by Defendant Sidhom for multiple complaints, including discomfort in his left hip. (*Id.*¶ 24.) Defendant Sidhom wrote a request for referral to an orthotics consultant. (*Id.*) On May 3, 2007, Plaintiff met again with Defendant Sidhom complaining that his hip was in pain and that his condition was worsening. (*Id.* ¶ 25.) Defendant Sidhom prescribed Plaintiff Naproxen for his pain and ordered no additional medical care. (*Id.*)

Dissatisfied, on July 3, 2007, Plaintiff filed a "Request for Administrative Remedy Informal Resolution Form," pursuant to Elkon's procedures for prisoner grievances concerning medical care. (*Id.* ¶ 31.) Three days later on July 6, 2007, Defendant Barnes, an Assistant Health Service Administrator at Elkton, met with Plaintiff and his doctor Defendant Harvey and discussed Plaintiff's grievance. (*Id.*¶ 32,) Both defendants Barns and Harvey agreed at that time that Plaintiff required a hip replacement. *Id.* A bone scan was ordered to commence the process. *Id.* On July 19, 2007, Plaintiff received his bone scan. (*Id.*¶ 33.) On August 15, 2007, Defendant Sidhom treated Plaintiff for his hip pain; he requested an orthopedic surgeon consultation and prescribed pain medication. (*Id*. ¶ 36)

On October 11, 2007, Plaintiff was given a cane of questionable usefulness to assist him in walking. (*Id.*¶ 39.) On October 25, 2007, Plaintiff saw an orthotics consultant who determined that the homemade lift-shoe that plaintiff wore was adequate. (*Id.*¶ 42.) On November 23, 2008, Defendant Sidhom prescribed Plaintiff Suldinac for his pain. (*Id.* ¶ 45). On

3

November 30, 2007, Plaintiff was seen by an orthopedic surgeon, who recommended hip replacement surgery. (*Id.*¶¶ 44, 48.) On December 18, 2007, Defendant Ward informed Plaintiff that his surgery was approved but still needed to be scheduled. (*Id.*¶ 52.)

On January 28, 2008, Plaintiff received a pair of custom-made orthopedic shoes. (*Id.*¶ 54.) On March 21, 2008, Defendant Ward treated Plaintiff and informed him that the Federal Bureau of Prisons Central Office Medical Designator ("Central Office") still needed to approve either Plaintiff's transfer to a medical center or approve having the procedure done locally through Elkton. (*Id.*¶¶ 58, 59.) While waiting for the surgery to be scheduled, Plaintiff was treated sometime around April 20, 2008, by Defendant Manenti, a physician at Elkton, who prescribed Proxicam for Plaintiff's pain. (*Id.*¶ 64.)

On April 23, 2008, Defendant Barnes informed Plaintiff that Central Office denied Plaintiff's transfer to a medical center and also would not allow Elkton to arrange for a local procedure. (*Id.*¶ 61.) Plaintiff filed a "Request for Administrative Remedy Informal Resolution Form," to dispute Central Office's denial of surgery, pursuant to Elkon's grievance procedures on May 7, 2008. (*Id.* ¶ 65.) Two days later on May 9, 2008, Defendant Barnes met with Plaintiff to discuss this grievance. (*Id.* ¶ 66.) Defendant Barnes informed Plaintiff that Central Office denied his surgery because it determined there was insufficient time to complete the necessary surgical follow-up, including physical therapy, before his release in September. (*Id.*)

Plaintiff then filed a grievance with the Utilization Review Committee on May 9, 2008. (*Id.* ¶ 69.) In a written response, Defendant Shartle, a warden at Elkton, explained that Plaintiff's surgery was denied by Central Office pursuant to BOP Policy P6031.01, Section 7, which states that inmates with less than 12 months to serve are generally ineligible to

4

receive elective procedures, including joint replacements. (*Id.*) Plaintiff did not receive Defendant Shartle's response until June 10, 2008, 20 days after it was dated. (*Id.* ¶ 70.) Plaintiff believes Shartle purposely withheld delivery of the response and misquoted BOP policy out of context. (*Id.* ¶¶ 70, 71.) Plaintiff completed two additional levels of grievances pursuant to the Bureau of Prisons' grievance policy in an attempt to receive hip replacement surgery, but to no avail. Plaintiff was released from Elkton on September 29, 2008. (*Id.* ¶ 76) He received a hip replacement on March 19, 2009, with Medicaid funds. (*Id.*)

## II. DISCUSSION

**A.     Legal Standard of Dismissal of Eighth Amendment Claims**

Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to provide him adequate medical care while he was in Elkton. Specifically, he alleges that Defendants wrongfully denied him hip replacement surgery. (Comp. ¶ 80.)

The Sixth Circuit holds that where a plaintiff seeks damages for a constitutional deprivation, defendants are "presumptively sued in their official capacity as federal employees [if] the complaint does not indicate that they [are] being sued as individuals." *Williams v. Secor*, 95 F.3d 1153, 1153 (6th Cir. 1996) (citing *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989)). Here, each defendant is a federal employee. (*See* Doc. No. 15.) Because the Complaint seeks purely monetary relief[2] and fails to specify in what capacity defendants Manenti, Ward, Harvey, Sidhom, and Barnes are sued, this Court presumes that each of these five defendants is sued in their official capacities. "Absent an express waiver, the doctrine of sovereign immunity

---

[2] Plaintiff also seeks "an order declaring that the defendants have acted in violation of the United States Constitution." (Compl. ¶ 82.) The requested relief is not the kind contemplated by 28 U.S.C. § 2201 and thus, it is within this Court's discretion to disregard it. *See generally Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-41 (1937); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 242-43 (1952).

5

bars claims for monetary relief that are brought against the United States, its agencies or its employees in their official capacity." *Williams*, 95 F.3d at 1153 (*citing Ecclesiastical Order of the Ism of Am., Inc. v. Chasin*, 845 F.2d 113, 115-16 (6th Cir. 1988)). Accordingly, Plaintiff's claims against defendants Manenti, Ward, Harvey, Sidhom, and Barnes are barred under the doctrine of sovereign immunity and warrant dismissal.

The doctrine of sovereign immunity does not, however, bar damage actions alleging constitutional violations against federal officials who have been sued in their individual capacity, such as defendant Shartle. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 396. (1971) The U.S. Supreme Court extended *Bivens* to Eighth Amendment claims alleging cruel and unusual punishment. *Carlson v. Green*, 446 U.S. 14, 18-23 (1980). The Complaint alleges that Defendants violated Plaintiff's Eight Amendment rights, and Defendants now move for dismissal of those claims under Fed. R. Civ. P. 12(b)(6). Assuming, *arguendo*, that Plaintiff had specified that the other five defendants, along with defendant Shartle, were sued as individuals, dismissal of Plaintiff's *Biven* claims against them would be warranted for the reasons set forth below.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-plead allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). Complaints filed by a *pro se* plaintiff must be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Estelle v. Gamble*, 429 US. 97, 106 (1976)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 44, 47 (1957). Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities). In other words, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. at 556, n.3 (criticizing the *Twombly* dissent's assertion that the pleading standard of Rule 8 "does not require, or even invite, the pleading of facts"). This requirement applies to all plaintiffs, including those proceeding *pro se*. *See Garrett v. Belmon Co. Sheriff's Dept.,* No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. Apr. 1, 2010); *Nat'l Bus. Devel. Serv., Inc. v. American Credit Educ. and Consulting, Inc.,* 299 F. App'x 509, 511 (6th Cir. 2008).

**B.    Analysis of Eighth Amendment Claims**

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court concluded that the Eighth Amendment was violated by acts of "deliberate indifference to serious medical needs of prisoners." 429 U.S. at 104. The Court further explained: "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05 (internal citations omitted). Plaintiff claims that each defendant "knew of Plaintiff's medical condition, knew it was painful and debilitating on a daily

7

basis, knew that the medication administered was ineffective and knew that there was one and only one procedure to correct the problem [hip replacement surgery], and instead choose to deliberately defer or otherwise ignore treatment […]." (Doc. No. 18 at 2.) In sum, Plaintiff claims that by refusing to surgically replace his hip, Defendants were deliberately indifferent to his serious medical need in violation of his Eighth Amendment rights.

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognized the necessity for a doctor's attention." *Blackmore v. Kalamazo Country*, 390 F.3d 890, 897 (6th Cir. 2004). Defendants do not contest, nor can they, that Plaintiff's hip condition was a serious medical need. *See Cain v. Huff*, 117 F.3d 1420, 1997 WL 377029, at *3 (6th Cir. July 2, 1997) (need for hip replacement is a serious medical need).

Deliberate indifference is "more than mere negligence, but 'something less than acts or omissions for the very purpose of causing harm or knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1970)). The deliberate indifference standard contains both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). The objective component inquires whether "the deprivation [was] sufficiently serious;" the subjective component inquires whether the "officials act[ed] with a sufficiently culpable state of mind." *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

### 1. Claims Against Defendants Sidhom, Harvey, Ward, and Manenti

The Complaint is replete with allegations of medical treatment that Plaintiff *did* receive while in custody at Elkon. For example, he received orthopedic shoes and a walking cane. (Compl. ¶¶ 39, 54.). His hip was x-rayed and his bones were scanned. (*Id*. ¶¶ 19, 20, 33.)

On numerous occasions, he was prescribed pain medication. (*Id.* ¶¶ 25, 33, 36, 45, 64.) He received a consultation with an orthopedic surgeon, and by December 2007, the medical staff at Elkton agreed that Plaintiff needed hip replacement surgery. (*Id.* ¶¶ 44, 48, 52.) The Complaint alleges that each of defendants Physician Assistant Sidhom, Doctor Harvey, Physician Assistant Ward, and Doctor Manenti treated Plaintiff's hip during his incarceration in Elkton. (*Id.* ¶¶ 17, 20, 24-26, 36, 45, 60, 64). Moreover, defendant Sidhom recommended that Plaintiff see an orthopedic surgeon and defendant Harvey recommended hip replacement surgery. (*Id*. ¶¶ 32, 33, 36.) Defendant Ward and defendant Manenti treated plaintiff after hip replacement surgery at been approved by Elkton. (I*d.* ¶¶ 52, 64.) Under any liberal reading of the Complaint, none of these four defendants can be said to have caused Plaintiff to not receive hip replacement surgery. Indeed, the Complaint alleges that Central Office, and not any of these defendants, denied his surgery. (*See id*. ¶ 61.)

The Complaint may, however, be liberally read as challenging the medical judgment of these four defendants and their standard of care by questioning their decision not to pursue hip replacement as a medical option sooner. When the cause of action is not based on allegations that treatment was denied but rather that treatment was inadequate, courts are reluctant to second guess the medical provider. *See, e.g., Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (granting summary judgment dismissing Eighth Amendment claims where evidence demonstrated negligence at best); *Westlake v. Lucas*, 537 F.2d 151, 154 (6th Cir. 1976) (same). Moreover, where, as here, a complaint alleges medical malpractice, such allegations may not constitute an Eighth Amendment violation. As the Supreme Court concluded in *Estelle*:

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional

9

> violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 106; *see Durham v. Nu'man*, 97 F.3d 862, 868-69 (6th Cir. 1996), *cert. denied Glover v. Durham*, 520 U.S. 1157 (1997). The Complaint's allegations concerning the medical treatment of Plaintiff's hip, including any delay in recommending replacement surgery, do not amount to deliberate indifference. *Cain*, 1997 WL 377029, at *4 (denial of hip replacement surgery amounted to medical malpractice, at most); *Sharpe v. Patton*, No. 08-CV-58, 2010 WL 227702, at *11 (E.D. Ky. Jan. 19, 2010) (same).

This is not a case in which an official acted with deliberate indifference to a prisoner's serious medical needs. Although Plaintiff may be understood to disagree with the medical judgments of the four defendant medical providers by failing to recommend a hip replacement sooner, he has failed to plead facts that might plausibly give rise to an Eighth Amendment violation with regards to defendants Sidhom, Harvey, Ward, or Manenti.[3]

### 2. Claims Against Defendants Barnes and Shartle

The Complaint does not allege that either defendant Health Administrator Barnes or defendant Warden Shartle provided Plaintiff any medical treatment, but rather it alleges that these two defendants injured Plaintiff by wrongly interpreting the federal Bureau of Prisons' policy. Specifically, Plaintiff alleges that in the course of his grievance process both defendants misinterpreted the Bureau of Prisons' policy concerning elective surgeries. (Compl. ¶¶ 32, 66, 69.) "Because vicarious liability is inapplicable to *Bivens* […] suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated

---

[3] Defendant Sidhom claims that the *Biven* claim against him is barred by the statute of limitations. As dismissal is warranted on other grounds, the Court need not address this argument.

the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff does not allege that either defendant participated in the decision to deny him surgery, but rather seeks to hold them responsible for explaining prison policy.[4] (*See* Compl. ¶¶ 66, 70, 71). Plaintiff, accordingly, has failed to plead that either of these defendants was personally involved in denying his hip replacement surgery, warranting dismissal of the *Bivens* claims brought against both defendants Barnes and Shartle.

Even if either defendant had been involved in the denial of Plaintiff's grievances, dismissal would likewise be warranted, because the "Sixth Circuit has held that a denial of an administrative grievance and the failure to remedy the alleged constitutional violation [does] not constitute sufficient involvement to establish liability." *Sheppard v. Jordee*, No. 07-14012, 2008 WL 4225465, at *3 (E.D. Mich. Sept. 9, 2008) (Clinical Administrative Assistant who denied a grievance concerning denial of hip replacement "not personally involved with his medical treatment" and thus could not be liable under § 1983) (quoting *Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).[5]

Accordingly, Defendants' Motion to Dismiss federal claims (Doc. No. 17) is hereby **GRANTED**, and the *Bivens* claims alleged against Defendants are dismissed.[6]

---

[4] Notably plaintiff alleges that Defendant Barnes assisted him in attempting to receive the medical care he sought. Indeed, as a direct result of meeting with defendant Barnes in July 2007, Plaintiff received a consultation with an orthopedic surgeon. (Compl. ¶ 32.)

[5] *Iqbal*, 129 S. Ct. at 1948 ("In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983.'")

[6] Defendants Harvey and Barnes also move for summary judgment. These two defendants allege that they are "duly commissioned officers employed by the United States PHS Commissioned Corps" and thus are entitled to absolute immunity under 42 U.S.C. § 233(a). As their motion can be resolved under Fed. R. Civ. P. Rule 12(b)(6), the Court need not reach this argument.

## C. Legal Standard of Dismissal of FTCA Claims

The Complaint also alleges medical malpractice claims against Medical Defendants. (Compl. ¶ 82.) Because they are federal employees, tort claims against them may be brought only pursuant to the Federal Tort Claims Act ("FTCA"), despite Plaintiff's baseless assertions to the contrary. *See* 28 U.S.C. §§ 2671-2680 (establishing a limited waiver of sovereign immunity concerning tort actions); *United States v. Smith*, 499 U.S. 160, 163 (1991) ("[A]n FTCA action against the Government [is] the exclusive remedy for torts committed by Government employees in the scope of their employment"); *see United States v. Testan,* 424 U.S. 392, 399 (1976).

Substituted defendant United States has filed a Notice of Substitution pursuant to 28 U.S.C. § 2679(d), substituting the United States in place of the individual defendants for any common law tort claims.[7] On behalf of Medical Defendants, substituted defendant United States moves to dismiss the FTCA claims under both Fed. R. Civ. P 12(b)(1) and Fed. R. Civ. P. 12(b)(6).[8] (Doc. No. 16). This Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood,* 327 U.S. 678, 682 (1946)).

---

[7] To the extent that Plaintiff's statement that "Defendants['] notice to substitute parties should be disallowed" may be understood to challenge this substitution, Plaintiff's efforts fail. (Doc. 18 at 2.) To challenge the notice, Plaintiff must produce evidence showing that Defendants were not acting within the scope of their employment. *Singleton v. United States,* 277 F.3d 864, 870-71 (6th Cir.2002). Plaintiff makes no such showing and produces no relevant evidence.

[8] Defendants' papers mistakenly move on behalf of defendant Shartle as well, but the Complaint makes no allegations of medical malpractice against the warden. (*See* Compl. ¶ 82.)

12

**D.     Analysis of FTCA Claims**

### 1.  Rule 12(b)(1) Dismissal For Failure to Exhaust Administrative Remedies

Under the FTCA, a prospective plaintiff must file an administrative claim with the appropriate federal agency before he may maintain a common law tort claim against the United States. 28 U.S.C. § 2675(a). Specifically, § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been fully denied by the agency in writing and sent by certified or registered mail [...].

The Sixth Circuit has indicated that a plaintiff must allege in the complaint that he or she filed an administrative claim to survive dismissal. *Joelson v. United States,* 86 F.3d 1413, 1422 (6th Cir. 1996) ("Because [plaintiff] does not allege that he has filed an administrative claim, he has not satisfied the jurisdictional prerequisite to obtaining review under the Federal Tort Claims Act."). In light of the U.S. Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199 (2007), however, any heighten standard of pleading can no longer apply to FTCA claims.

In *Jones v. Bock*, the Court held that district courts could not require prisoners bringing lawsuits under the Prison Litigation Reform Act ("PLRA") to plead that they had exhausted all administrative remedies in their Complaint in order to proceed in district court. 549 U.S. at 216. The Court stated that "[s]pecific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts." *Id.* (citations omitted). The Court concluded that "the failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.*; *accord Vandiver v. Corr. Med. Servs.*, Inc., 326

F. App'x 885, 888 (6th Cir. May 1, 2009) (citing *Bock* as saying that "a prisoner's failure to exhaust under [PLRA] is an affirmative defense on which the defendant bears the burden of proof"). The Sixth Circuit explained post-*Bock* that the plaintiff does "not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants." *Kramer v. Wilkinson*, 226 Fed. App'x 461, 462 (6th Cir. 2007) (*per curiam*). Similarly, district courts may not require plaintiffs to plead exhaustion in order to proceed with a FTCA claim without violating the Federal Rules of Civil Procedure.

The exhaustion requirement is jurisdictional, "not capable of waiver or subject to estoppel." *Garrett v. United States*, 640 F.2d 24, 26 (6th Cir. 1981) (citing *Executive Jet Aviation, Inc. v. United States*, 507 F.2d 508, 515 (6th Cir. 1974)). In typical cases, the plaintiff bears the burden of demonstrating that the court has and may appropriately exercise jurisdiction over the subject matter. *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1135 (6th Cir.1996). In light of *Bock*, however, it is unsettled whether the exhaustion requirement of the FTCA should be treated as an affirmative defense for which defendant carries the burden, like a PRLA claim, or whether it remains a typical jurisdictional challenge for which plaintiff carries the burden. In either event, Defendants have properly raised it under Fed. R. Civ. P. 12(b)(1).

There are two general categories into which Fed. R. Civ. P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall: facial attacks and factual attacks. *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994), *cert. denied,* 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). A facial attack challenges the sufficiency of the pleading itself. On such a motion, a court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id., citing* (*Scheuer v.*

*Rhodes,* 416 U.S. 232, 235-37 (1974)). In contrast, a factual attack, as is made here, challenges the factual existence of subject matter jurisdiction. On this form of motion, a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, a court has wide discretion to consider affidavits and documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary. *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). A court may examine evidence of its power to hear a case, and must make any factual findings necessary to determine whether it has jurisdiction. *Kroll v. United States,* 58 F.3d 1087, 1090 (6th Cir.1995); *Rogers v. Stratton Inds., Inc.,* 798 F.2d 913, 915 (6th Cir.1986).

28 C.F.R. § 14.2 sets forth the general requirements to file an administrative claim under the FTCA. In short, these regulations require the claimant to submit a written notification describing the incident and including a claim for money damages in an exact amount to the relevant federal agency. 28 C.F.R. § 14.2. The procedures to file an administrative tort claim with the Bureau of Prisons are set forth at 28 C.F.R. §§ 543.30 *et seq*. In the instant action, a claim should have been submitted to the Northeast Regional Director of the Bureau of Prisons. 28 C.F.R. § 543.31(c); *see, e.g., Valdez v. Sniezek*, No. 4:06CV663, 2006 WL 1624330, at *3 (N.D. Ohio June 6, 2006). Medical Provider Defendants submit the Declaration of Vanessa Herbin-Smith, supervisory paralegal of the Northeast Regional Office of the Bureau of Prisons, in support of their motion. (Doc. No. 16-2). The declaration proves that Plaintiff failed to file an administrative tort claim with the proper federal agency. (*Id.*) In his papers, Plaintiff does not claim that he exhausted his remedies under the FTCA, but only responds that "no action has been filed under the FTCA." (Doc. No. 18 at 2). Regardless of which party carries the burden of proof,

the Court must conclude under these facts that Plaintiff failed to exhaust his remedies pursuant to the FTCA.

Accordingly, Court lacks subject matter jurisdiction over the common law tort claims against substituted defendant United States, and the medical malpractice claims against Medical Defendants warrant dismissal.

### 2. Rule 12(b)(6) Dismissal for Failure to Attach an Affidavit of Merit

Even if Plaintiff had exhausted his remedies, his tort claims would still warrant dismissal under Fed. R. Civ. P. 12(b)(6). The legal standard for assessing a Rule 12(b)(6) motion is detailed above. *Supra* Section II.A.

In Ohio courts, complaints alleging medical malpractice must be accompanied by an affidavit of merit. Ohio Civ. R. 10(D)(2). The Ohio Supreme Court detailed the rule's requirements:

> The affidavit must be from an expert qualified under Evid. R. 601(D) and 702 and must include statements that the affiant (1) 'has reviewed all medical records reasonably available,' (2) 'is familiar with the applicable standard of care,' and (3) is of the opinion that the defendants breached the standard of care and caused the plaintiff's injury.

*Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 169 (2008) (quoting Ohio Civ. R. 10(D)(2)). Plaintiff filed no affidavit of merit along with the Complaint as would be required under the Ohio Civ. R. 10(D)(2). The Federal Rules of Civil Procedure, however, require no such affidavit of merit. This Court must decide which rule applies.

To determine whether to apply Ohio or federal law to a FTCA claim, this Court must apply the doctrine enunciated by the U.S. Supreme Court in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 1938), which held that federal courts sitting in diversity must apply state substantive law and federal procedural law. *Accord Felder v. Casey*, 487 U.S. 131, 151 (1988) (holding that

the *Erie* doctrine also applies when the federal court exercises pendent jurisdiction). The Sixth Circuit has indicated that the *Erie* doctrine applies to FTCA actions and stated that "[a]s a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred." *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995) (citations omitted).

To decide whether a rule is substantive or procedural for *Erie* purpose, the Supreme Court enunciated an outcome-determinative test: "The question is […] does it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945). The Court later stated: "The 'outcome-determination' test […] cannot be read without reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).

Here, the requirement of attaching an affidavit of merit determines the outcome of the case. Failure to attach an affidavit of merit results in dismissal. *Fletcher*, 120 Ohio St.3d at 170-71. The requirement to attach one, therefore, must be substantive. *Daniel v. United States*, No. 1:09CV2371, 2010 WL 481267, at *3-4 (N.D. Ohio, Feb. 5, 2010); *accord Nicholson v. Catholic Health Parnters*, No. 4:08CV2410, 2009 WL 700768, at*3 ( N.D. Ohio Mar. 13, 2009) (holding certificate of merit required in diversity case); *Hodge v. United States Dep't of Justice*, No. 09-3723, 2010 WL 1141387 (3d Cir. Mar. 25, 2010) (holding FTCA claim required certificate of merit under Pennsylvania law); *Cestnik v. Fed. Bureau of Prisons*, 84 Fed. App'x. 51, 53-54 (10th Cir. 2003) (holding FTCA claim required certificate of merit under Colorado

law); *Mathison v. United States*, 44 Fed. App'x 27, 29 (8th Cir. 2002) (holding FTCA claim required certificate of merit under Minnesota law). To hold otherwise would thwart the policy goals of *Erie*, *i.e*, a plaintiff bringing FTCA claims in state court would have a different result than one in federal court. Accordingly, FTCA claims alleging medical malpractice in Ohio district courts must be accompanied with an affidavit of merit or be dismissed. Since Plaintiff attaches no affidavit of merit to the Complaint, his medical malpractices claims warrant dismissal.[9]

Accordingly, Substituted Defendant United States' Motion to Dismiss the state claims (Doc. No. 16) is hereby **GRANTED**, and the FTCA claims against Medical Defendants are dismissed.[10]

### III. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's Complaint are granted. This case is dismissed in its entirety with prejudice.

**IT IS SO ORDERED**.

Dated: October 12, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[9] Plaintiff does not avoid this pleading requirement simply because he proceeds *pro se*. As the U.S. Supreme Court stated: "While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed […], and have held that some procedural rules must give way because of the unique circumstances of incarceration […], we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993).

[10] Even if plaintiff amended the Complaint by attaching a certificate of merit, his FTCA claims would be barred under the statute of limitations. Plaintiff's claims began to run by at least June 10, 2008, when he officially learned of Central Office's denial of hip replacement surgery. (Compl. ¶ 70). 28 U.S.C. § 2401(b) sets the statute of limitations for filing an administrative claim at two years. Thus, Plaintiff should have filed a claim with the Northeast Regional Office of the Bureau of Prisons by at least June 10, 2010. Any amendments concerning his FTCA claims would therefore be futile.